## Case No. 9,059.

### MARBLE v. FULTON et al.

[1 Hask. 462.] [1]

District Court, D. Maine.   Dec., 1872.   Jan., 1873.

BANKRUPTCY—BOND TO APPEAR—BREACH OF CONDITION—ACTUAL DAMAGE—ABSCONDING BANKRUPT.

1. An action of debt lies upon a bond given by a bankrupt conditioned for his appearance in court from day to day agreeable to its order.

2. The avoidance of a principal, after being adjudged a bankrupt upon his creditors' petition, is a breach of the condition of his bond authorized by section 40 of the bankrupt act [of 1867 (14 Stat. 536)], taken to secure his attendance in court until decision upon that "petition or the further order" of court.

3. Upon breach of the condition of such bond, the plaintiff may recover the actual damages sustained.

4. Upon a bond of defeasance there can be but one suit and one assessment of damages.

5. In the assessment of damages, the pleadings are not regarded, and damages may be assessed for all existing breaches, whether specified in the pleadings or not.

6. The absconding of a bankrupt with assets greater than the penalty of his bail bond is a direct loss to the bankrupt estate, recoverable upon the bond to the amount of its penalty with interest from the date of the writ.

Debt [by Sebastian S. Marble against James E. Fulton, and others] for the penalty of a bail bond.   Upon oyer it disclosed a condition for the appearance of the principal in court to answer to a creditor's petition in bankruptcy against him, and for his appearance from time to time as required by the court until decision upon the petition or until further order of court.

Plea.   Omnia performavit.
Replication.   Avoidance of the principal by not appearing and furnishing schedules

---

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

in bankruptcy in obedience to order of the court.

Rejoinder. No order of court so to do within the time stipulated by the condition of the bond. Issue taken.

William L. Putnam, for plaintiff. .

Henry B. Cleaves, Nathan Cleaves, and Joseph Howard, for defendant.

FOX, District Judge. This is an action of debt on a bond given by a bankrupt, upon his arrest, under the provisions of the 40th section of the bankrupt act, and is prosecuted in the name of the marshal for the benefit of the assignee in bankruptcy. It appears that on the 19th of February, 1872, Locke, Twitchell & Co. filed their petition in the district court of Maine against Fulton & Ricker, praying that they might be adjudged bankrupts, and an order of notice was issued thereon returnable March 4th. On the 19th of February another petition was filed by the same creditors praying for the arrest of Fulton & Ricker under the provision of the 40th section of the act, and upon probable cause being shown to the court, they were ordered to be held to bail in the sum of $2,000.

Upon his arrest on February 27, Fulton gave bond in that amount with Elijah Fulton and John D. Spiller as sureties, conditioned "that if the above bounden James E. Fulton shall appear and answer to the said Locke, Twitchell & Co., petitioners as aforesaid, as by said order provided, and shall thereafterwards appear from time to time as required by said court until the decision of said court upon said petition, or the further order of said court, then the above written obligation shall be null and void, otherwise in full force." On the return day of the order of notice, Fulton & Ricker appeared, but the hearing was postponed from time to time until the 6th day of May when they were adjudged bankrupts, and the usual decree of bankruptcy was then entered against them with an order to furnish schedules of their assets and liabilities within five days as provided in form No. 58, General Rules and Orders, which order not being complied with, on the fifth day of June a petition was presented by their assignee in bankruptcy that the said James E. Fulton might be required by order of court to appear on a day certain and file such schedules. Upon this petition it was ordered that he appear on June 17th, which order was served on the said Fulton by leaving a copy of the same at his usual place of abode, and the same was also duly served on the sureties on his bond, and no appearance being then had, said James E. Fulton and his sureties were on said 17th day of June defaulted, and their default was duly entered on the docket.

The first objection taken is, that an action of debt upon this bond cannot be maintained in this court, but that the only remedy in the federal courts in Maine is by scire facias. It is clear that in the courts of this state scire facias is the only remedy against bail, as it was thus decided in Packard v. Brewster, 59 Me. 404, and the act of congress approved June 1, 1872, c. 255, § 5 [17 Stat. 195], requires "that the practice, pleadings, forms and modes of proceeding, in other than equity and admiralty causes in the circuit and district courts, shall conform as near as may be to the practice, &c., existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held." If this obligation were a common bail bond, in accordance with the law of the state, it might be the duty of the court to restrict the remedy thereon to an action of scire facias.

But in this state it is prescribed by law, that a bail bond shall be returned to the court by the sheriff and filed with the writ, and if judgment is rendered thereon, the clerk is required to enter on the margin of the execution the names of the bail and their abode, and demand must be made upon the bail personally by the officer holding the execution fifteen days at least before the return day, certifying that he cannot find the principal or property to satisfy it; all of which must appear by his return on the execution, and thereupon scire facias issues. In the present case, few if any of such provisions are applicable. The proceeding in which the bail is required, instead of being an action at common law for the recovery of a claim, is in the nature of a proceeding in equity, and there is nothing to be found in the act requiring the marshal to return the bond to court and file it with his warrant; no fixed amount is recovered by a judgment, and no execution issues to the marshal upon which a return of "not found" can be made, as is done by the sheriff on the state process. Under the state practice, all the proceedings from the inception are required to appear upon the files of the court, and become substantially a part of the record, while nothing of that kind is required by any of the provisions of the bankrupt act. The practice of the state courts in such matters is so entirely different from the course to be adopted in bankruptcy proceedings, that the court is of opinion, that the requirements of the act of 1872 cannot be held applicable in the present instance, but that the common law may be appealed to for a remedy, which it is not disputed authorizes an action of debt in such a case.

The defendants plead performance, and the plaintiff replies, a breach by the principal's not appearing and producing his schedules in obedience to the order of the court. The condition of the obligation being in the very words of the statute, what is its legal effect? It is claimed that its operation is limited to the time of the adjudication of bankruptcy, and should not extend beyond that period;

that if the bankrupt complied with all orders of the court made prior to the adjudication, and appeared from time to time as he may have been required by the court, that any order subsequent to the adjudication is not within the condition, so as by its disobedience to constitute a breach. At first this objection would seem to be of considerable force, but upon reflection and an examination of the entire section and looking at the purpose to be accomplished, it appears to me, that such a construction is too restricted, and if adopted would to a great extent defeat the intended purpose. The section authorizes the arrest when probable cause is shown for believing that the debtor is about to leave the district, or to remove or conceal his property, or make any fraudulent disposal thereof. The presence of the party and control of his estate, if he shall be decreed bankrupt, are the objects to be reached by his arrest, and not that the court may be enabled to render a decree against him. This the court could accomplish without his personal presence, as the same section authorizes service of the petition by delivering to him a copy personally, or by leaving the same at his last or usual place of abode, and if he cannot be found or his place of residence ascertained, service shall be made by publication in such manner as the judge may direct. The court therefore, without an arrest of the party, it will be seen, can thus obtain jurisdiction over him, so as to authorize a decree of bankruptcy.

If the operation of the condition of the bond terminates by the decree of bankruptcy, the arrest will accomplish little or nothing, as it is not until after the adjudication that the personal presence of the bankrupt is ordinarily required, or the assignee is authorized to assume the possession and control of his property. In most instances, nothing whatever is required to be done by the bankrupt before his bankruptcy is established, and it is after that time that the law requires his aid and assistance in a full exposition of his condition, and of his assets and liabilities, and in reaching his estate for the benefit of his creditors. When the statute authorized the arrest it was that he might thus be compelled to render his personal assistance in the adjustment and investigation of his affairs, and any construction of the law which would tend to defeat this object, the court ought not to adopt unless absolutely compelled so to do by the language of the act. The act declares, "that he shall give bail for his appearance from time to time until the decision of the court upon the petition, or the further order of the court."

Two distinct periods are here designated in which the debtor may be required to appear. One, until the adjudication, the other, on the further order of the court. When then must this further order be made to become obligatory on the bail? It would certainly seem that it does not contemplate an order made prior to the adjudication of bankruptcy, because such is fully provided for by the preceding words in the same clause, which in terms require the appearance from time to time as required prior to the adjudication. These words "on the further order of the court" must, if they have any effect, be construed as referring to orders for his appearance subsequent to the adjudication, and by so doing they become effective and not mere surplusage, and they assist most materially in accomplishing the purpose of the arrest; but if they are stricken from the act by any judicial construction, and it should be held that by the condition of the bond the attendance of the principal was not requisite after the adjudication, the purpose of the arrest would in most instances be defeated. "Or" is sometimes construed as "and" when it is necessary to give effect to some legislative provision and in the construction of wills, and this rule has been heretofore adopted in the construction of one of the original provisions of the bankrupt law.

By the 39th section of the act as passed, it was declared that the assignee might recover back the money or other property conveyed contrary to law, provided the person receiving the payment or conveyance had reasonable cause to believe that a fraud on the act was intended or that the debtor was insolvent. In Wadsworth v. Tyler [Case No. 17,032], the word "or" in this provision was construed "and," and this interpretation was sustained by congress by an act affirmed July 27, 1868 [15 Stat. 227], substituting "and" for "or." The failure of the principal to appear and file his schedules in obedience to the order of the court, although made subsequent to the adjudication of bankruptcy, was in my view a breach of the condition of the obligation within the meaning of the act.

It is shown that the penal sum named in the bond, together with the entire assets which can be realized from the estate, would not be sufficient to satisfy the debts proved against the estate, and the plaintiff therefore claims that he is entitled to recover as damages the full amount of the penalty, but this, in my opinion, cannot be adopted as the rule of damages.

It is said, that this obligation is a bail bond with the ordinary usual effect of such bonds; that it runs to the marshal, and the bail may be exonerated by a surrender of the principal before judgment, and that unless they are thus discharged, bail are held accountable for the full amount of the original demand and costs, and cannot relieve themselves by proof of the inability of their principal. Such is probably the result attending bail at common law, and the sureties are held accountable for the debt. But in such case, the arrest is made on process for the recovery of a fixed definite amount, which is determined by the judgment, while in the present instance, the amount of

the penalty is wholly in the discretion of the judge, determined entirely without reference to the amount of the debtor's liabilities, but only in such sum as will be likely to secure his attendance and compliance with the orders of the court. No judgment is ever rendered by the court in the proceeding upon which an execution could issue and the liability of bail thereon be fixed. The only indebtedness of the bankrupt, which is shown to the court at the time of the order of the arrest, is the amount due to the petitioning creditors, which in the present case was about $1,400 only. The analogy therefore, between bail at common law being held accountable for the amount of the execution which may be recovered and the amount of the bankrupt's indebtedness to all of his creditors, does not appear to me to be so strong as to require me to give judgment and execution for the penal sum in the bond. The act of 1789 (1 Stat. p. 87, § 26) requires, "that in all causes brought before either of the courts of the United States to recover the forfeiture annexed to * * * any bond or other specialty, when the forfeiture, breach or non-performance shall appear by the default or confession of the defendant or upon demurrer, the court before whom the action is brought shall render judgment therein for the plaintiff to recover so much as is due according to equity. And when the sum for which judgment should be rendered is uncertain, the same shall, if either of the parties request it, be assessed by a jury." The present hearing is not brought strictly within this provision, as the case is not presented for a decision on default, confession or demurrer, but is submitted on the pleadings and evidence to the judge for decision of law and fact; but it seems to the court that this provision is declaratory of the true rule as to the damage to be recovered upon a breach being shown of such an obligation, that is, the plaintiff should recover only the amount equitably due and no more. Such is the ordinary practice in a hearing in damages on such instruments. Forrar v. U. S., 5 Pet. [30 U. S.] 375; Ives v. Merchants' Bank, 12 How. [53 U. S.] 159.

It is claimed that this construction should not be adopted as it is impossible to determine the damages occasioned by the breach; but the uncertainty attending the computation of the damages cannot affect the rule of law as to the right of recovery. The plaintiff is bound to satisfy the court or jury as to the damages he has suffered from the breach, otherwise he is entitled only to a nominal sum (Gowen v. Nowell, 2 Me. 13); and this rule cannot be modified by reason of the difficulty of proof.

In Greely v. U. S., 8 Wheat. [21 U. S.] 257, and in U. S. v. Hatch [Case No. 15,325], the penalty of each bond was fixed by congress, and that amount must have been understood to be the sum which was established by law to be paid in case of a breach of the condi-

tions by violation of a positive provision of the law which the bond was given to enforce. In bonds given under process of ne exeat, the arrest is made by order in chancery; but the action on the bond, if broken, is before the courts of common law, who render judgment for the penalty which is paid into the chancery court, and by the order of that court disposed of and applied according to the rights of the parties, which in many respects. is applying the chancery practice to the disposal of this sum. The plaintiff, therefore, can only recover for such damages as he may satisfy the court he has sustained by a breach of the obligation by the principal.

FOX, District Judge. The court having decided that the principal has broken the condition of the bond by his non-appearance on the 17th of June and not filing his schedules in compliance with the order of court, the question of damages is now submitted for determination on a hearing in chancery. The obligation not being one for the performance of covenants or agreements, there can be but one suit and one assessment of damages for which execution shall issue. This principle is very fully discussed in the learned opinion of Davis, J., in Philbrook v. Burgess, 52 Me. 271, and is fully sustained by that authority. The breach assigned in the present case is of a double character, first, by the principal's non-appearance on the 17th of June, and secondly, by his not filing his schedules in bankruptcy on that day as required by the order of the court. Similar breaches are shown to have been committed on a previous day, as by the order of reference to the register; the bankrupts were required "on or before the third day of June to file with the register a duplicate copy of the petition and the schedules of creditors, and an inventory of their estate individually and as co-partners, and to attend before said register on said day, and thenceforth as said register may direct to submit to such orders as may be made by said register or by this court relating to the said bankruptcy."

It is in proof that but a short time prior to the institution of the proceedings in bankruptcy against Fulton & Ricker, said Fulton converted into money or notes a large amount of the assets of the firm by disposing of property and collecting from the debtors of the firm considerable sums. It is not shown that the amounts so received by him were applied in discharge of firm liabilities, and upon all the evidence, I find that at the time said Fulton absconded, he had in his possession or under his control more than $2,000 of the assets of the firm, which with reasonable diligence the assignee has not been able to recover for the benefit of the estate, and in this amount, I have not included any portion of the sums received by James E. Fulton from Elijah Fulton subsequent to January 1, 1872. The plaintiff claims, he is entitled to recover

as damages the amount thus abstracted by Fulton and withdrawn by him beyond the reach of the process of the court in bankruptcy; while the defendants insist that this is not brought within any breach of the condition of the bond, and is not recoverable in this suit. The rule as stated in Hatch v. Attleborough, 97 Mass. 538, is: "The hearing to ascertain for what amount execution shall be awarded is an assessment of damages according to equitable principles, and no pleadings on either side are required, nor can any defect or admission in the previous pleadings deprive either party of the right to a complete adjustment of all the claims secured by the bond." The plaintiff therefore is entitled to recover all his damages sustained from any breach of the bond, whether such breach is or is not assigned in the pleadings; but it is only the damages occasioned by existing breaches, and not such as may hereafter arise from any future breach of its conditions, which are recoverable. The only breaches shown by the testimony are the principal's non-appearance at court on the several occasions when ordered so to do by the court, and his failure to comply with the orders to file his schedules of liabilities and assets, for the non-compliance with the first of which orders, he was adjudged in contempt, and a warrant for his arrest was in the hands of the marshal at the time he was ordered a second time to appear in court.

In determining whether the plaintiff should recover under these breaches the amount thus abstracted by the principal, he must ascertain whether the loss of this sum to the estate is or is not an immediate direct result of his refusal to appear in court in obedience to its command, for if it is, the plaintiff should recover the full amount.

The argument for the defendants is, that if the principal had appeared in court and filed his schedules, he would have obeyed the order and prevented any breach of the obligation, and that a further order of the court, commanding him to refund to the assignee the amount in his hands, would have been required, service of which he could have avoided by immediate flight if he so desired; but such I apprehend would not have been the result if he had appeared before the court on the 17th of June, as on his appearance in the court on that day, it would have been the duty of the court to have ordered him at once into the custody of the marshal to answer for his contempt, and he, beyond all question, would for some time at least have been in such a situation that the marshal would have had no difficulty in notifying him of any further requirements of the court.

The question here is, not what would have been the effect of his obedience to the order of the court, and what further proceedings would then have been requisite on the part of the assignee to obtain from the possession of the bankrupt this property; but it rather is, what are the consequences of his non-compliance with the order, and of his continued avoidance; and it is clear that the result of his non-appearance is that he continues beyond the process of the court of bankruptcy with this amount of property belonging to the estate, which most certainly he would have been compelled to restore to the assignee if he had obeyed the authority and command of the court; and the necessary consequence of his disobedience and avoidance is, to deprive the estate of that amount of assets by holding them beyond control of the assignee or of the authority of the court in bankruptcy. If he had been present in court June 17, that amount would have been saved and obtained for the estate, which by his absence he is enabled to withhold. His presence or absence therefore resulted directly in a gain or loss to the estate of the sum then in his possession and which belonged to the estate.

I therefore award as damages the full amount of two thousand dollars and interest from the date of the writ.